**Gregory E. LEWIS, Plaintiff,**

v.

**E.A. McDORMAN, Defendant.**

Civ. A. No. 91–22–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

July 30, 1992.

S'Ad El–Amin, El–Amin & Crawford, P.C., Richmond, VA, for plaintiff.

James W. Hopper, James W. Hopper, P.C., Richmond, VA, for defendant.

## MEMORANDUM OPINION

CRIGLER, United States Magistrate Judge.

This action is before the court on defendant's motion to dismiss, the case having been transferred to this court pursuant to 28 U.S.C. § 636(c). Plaintiff Gregory Lewis (hereinafter "Lewis") seeks recovery under 42 U.S.C. § 1983 for wrongful prosecution resulting in an alleged deprivation of rights secured to him by the 4th and 14th amendments, as well as under supplemental state law theories of malicious prosecution, false imprisonment, and negligence. Lewis' claims concern, in part, defendant's failure to present substantially exculpatory evidence to the grand jury. Hence, during oral argument held on May 11, 1992, the court addressed inquiries to counsel and ordered further briefing in light of the Supreme Court's recent decision in U.S. v. Williams, —— U.S. ——, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992). The parties having filed additional briefs concerning the effect of Williams on the instant action, the court finds defendant's motion to be ripe for adjudication.[1]

This case bridges a variety of issues concerning alleged bad faith in the charging process. The issues posed require the court to focus narrowly on the precise constitutional deprivation alleged in order neither to rob plaintiff of a claim that is justly his nor to allow entry through the back door of constitutional torts which the Supreme Court recently has barred at the gate. A brief review of the facts will help to focus the inquiry.

### A. Facts.

Lewis alleges in his second amended complaint (hereinafter "complaint" or "complt.") that, beginning in January, 1990, he was the target of an undercover investigation designed to interdict the distribution of cocaine. Lewis admits to having pleaded guilty in 1985 to four counts of possession with intent to distribute a Schedule II controlled substance. Pursuant to his plea agreement, Lewis was sentenced to five years imprisonment, with three years suspended, and 5 years probation. At the time the facts giving rise to this action occurred, Lewis was on probation.

According to Lewis, in January, 1990, one Strother agreed to serve as an undercover informant for the Harrisonburg Police Department, and specifically for defendant, Detective E.A. McDorman (hereinafter "McDorman"). McDorman sent Strother to Lewis to make a controlled purchase of cocaine. Strother and Lewis met on January 9, 1990, during which Lewis claims to have informed Strother that he knew Strother was an informant, that Strother was to stop telling people that Lewis dealt drugs, and that Strother should stay away from Lewis' home. Strother thereafter turned over to McDorman a plastic bag containing a white powder, which McDorman claims Strother represented to him was purchased from Lewis. McDorman sent the white powder to a laboratory for analysis. The powder was analyzed by a state chemist, Vickie A. Miller, on February 14, 1990. Miller reported the results of her analysis in a certificate of analysis, wherein she stated, "No controlled substances found."

---

1. While defendant filed a formal brief, plaintiff, by counsel, apprised the court of his position by facsimile letter to which the defendant responded by letter. Letters are not the preferred way of preserving positions on the record of the case, and the parties are requested to refrain from such practice in the future.

Lewis' claims arise from the events which followed the issuance of the certificate of analysis. Sometime on or after March 19, 1990, McDorman, while in possession of the certificate of analysis, and purportedly acting under color of law, appeared before a Rockingham County, Virginia grand jury. During his appearance, McDorman allegedly suppressed the results of the laboratory analysis, and provided other misleading information, resulting in the handing up of a sealed indictment charging Lewis with distribution of cocaine. Lewis was then arrested and charged pursuant to the indictment, which Lewis alleges McDorman knew, or should have known, lacked probable cause in light of the certificate of analysis. Lewis offers that McDorman suppressed the exculpatory lab analysis for the sole purpose of having Lewis prosecuted for the felony charged in the indictment. Plaintiff, who was released on bond after serving approximately three days in jail, was not tried on the indictment. Instead, in late November, 1990, the Commonwealth of Virginia (hereinafter "Commonwealth") amended the indictment to charge Lewis with attempted distribution of cocaine. In January, 1991, the Commonwealth had the court nolle prosse the amended indictment.

### B. *Contentions.*

Lewis contends that McDorman's actions resulted in a deprivation of Lewis' 4th amendment right to be free of arrest, except upon probable cause, and of his 14th amendment right to due process of law, in violation of 42 U.S.C. § 1983. Lewis also claims entitlement to relief under state law for malicious prosecution, false arrest, and willful and wanton negligence.

McDorman sets forth several grounds in support of his motion to dismiss. First, he claims absolute witness immunity from § 1983 claims arising from his appearance before the grand jury. Second, he claims that Lewis has failed to allege facts to show that McDorman deprived him of a constitutionally protected right. In support, McDorman cites *Williams, supra.,* as standing implicitly for the proposition that one has no constitutional right to have exculpatory evidence presented to the grand jury, and as indicative of the Court's alignment with those circuits which have extended absolute witness immunity from claims under § 1983 arising out of grand jury proceedings. Finally, with regard to the supplemental claims, McDorman contends that Lewis has failed to plead facts showing that McDorman arrested him or had any power, and therefore duty, as a police officer to empanel or otherwise affect the grand jury, or to prosecute individuals whom the grand jury indicts.

### C. *Discussion, Findings, and Conclusions.*

As this recitation makes clear, the parties are somewhat at odds as to the particular constitutional right forming the basis of Lewis' complaint. McDorman perceives Lewis to be claiming, in effect, a right to have investigating officers disclose exculpatory evidence during their testimony before the grand jury. Lewis, on the other hand, asserts a deprivation of specific 4th and 14th amendment rights stemming from McDorman's actions in furtherance of the prosecution, though he lacked probable cause to pursue such actions. In essence, Lewis seeks recovery for malicious prosecution of a constitutional magnitude.

The court's inquiry at this stage of the proceeding merely is to determine whether Lewis has stated a claim; the question is whether, construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that the court could grant no relief under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Revene v. Charles County Commissioners,* 882 F.2d 870 (4th Cir.1989). Fortunately for the court, the slate is not entirely clear of precedent.

The Fourth Circuit has recognized that concealment of exculpatory evidence which results in a constitutional deprivation provides the basis for an action under § 1983. *See Goodwin v. Metts,* 885 F.2d 157 (4th Cir.1989) (hereinafter "*Goodwin*"); *cert. denied sub nom. Maxwell v. Goodwin,* 494 U.S. 1081, 110 S.Ct. 1812, 108 L.Ed.2d 942 (1990); *see also Sanders v. English,* 950 F.2d

1152, 1163, 64 (5th Cir.1992) (relying on *Goodwin* ). The nature of such a claim is that of state law malicious prosecution resulting in a constitutional deprivation. *Id.* at 160 n. 1. In *Goodwin,* the relevant state law was that of South Carolina. Discussing whether a defendant investigating officer who withheld exculpatory information from the prosecution that negated probable cause could be said to have wrongfully instituted, aided, or caused to be maintained a criminal prosecution, where only the county solicitor had authority to terminate proceedings, the court said the relevant issue was causation. *Id.* at 161, 162. Thus, "[a] police officer who withholds exculpatory information from the prosecutor can be liable under both section 1983 and the state common law," *Id.* at 162, where "his actions and omissions caused the [defendant] unfairly to be subjected to a criminal trial," *Id.* at 162–63. The Fourth Circuit borrowed the reasoning of the Seventh Circuit in *Jones v. City of Chicago,* 856 F.2d 985 (7th Cir.1988), noting that

> in constitutional-tort cases, as in other cases, a man is responsible for the natural consequences of his actions[, hence,] a prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial—none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision.

*Goodwin,* 885 F.2d at 162 (quoting *Jones* at 993) (internal citations and quotation marks omitted). In addition, the court stated that while at some point after arrest, the constitutional basis for wrongful prosecution moves from the 4th amendment to the 14th, this causal inquiry remains unchanged. *Id.* (cit-

ing *Jones* ).[2] As to the constitutional deprivation worked by withholding one's knowledge that probable cause is lacking, the Fourth Circuit held in *Goodwin* that incarceration of the plaintiff was not decisive in determining whether his constitutional rights had been abridged. *Id.* at 163. Instead, merely "[b]eing subjected to a prosecution because an officer withheld exculpatory evidence from the prosecutor while urging that the prosecution should go forward can work a constitutional deprivation." *Id.* This is because a prosecution may interfere not only with a defendant's physical liberty, it may also "disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family, and his friends." *Id.* (citation omitted).[3]

In taking this stance, the Court of Appeals scotched the idea that its decision in *Cramer v. Crutchfield,* 648 F.2d 943 (4th Cir.1981) (*per curiam* ), excluded the possibility that wrongful prosecution could give rise to a § 1983 claim. In *Cramer,* the court merely held that one proceeding under § 1983 must allege a constitutional deprivation, 648 F.2d at 945; in *Goodwin,* the court established that a denial of "due process" through withholding evidence negating probable cause was a sufficient deprivation within the meaning of *Cramer. Goodwin,* 885 F.2d at 163.

Discussing the claims against defendants in *Goodwin,* the Fourth Circuit noted that "[e]ssentially, the section 1983 claim consists of malicious prosecution resulting in a constitutional deprivation. *Cf. Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (parallel citations omitted)." 885 F.2d at 160 n. 1. This language is somewhat

2. The *Jones* court had reasoned analogously from *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), an immunity case, wherein it was held that the issuance of an arrest warrant would not shield a police officer who applied for the warrant from liability if a reasonably well-trained officer would have known that he lacked probable cause. *Goodwin,* 885 F.2d at 162.

3. The Fourth Circuit, in *Goodwin,* linked the 4th and 14th amendments in its constitutional analysis, and noted that the constitutional evil arose not from any one element or procedural short-

coming, but from the very occurrence of prosecution in bad faith. 885 F.2d at 162. With this analysis, the court conveyed that the 14th amendment deprivation at stake in such cases is substantive, not procedural. This court, having considered the matter *sua sponte,* therefore concludes that defendant cannot rely on the *Parratt* random act defense, as that defense applies only to procedural due process violations. *See Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990); *see also Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

ambiguous. It may mean, for example, that to state a § 1983 claim for wrongful prosecution, a plaintiff must plead all elements of the common law tort, which in South Carolina included elements such malice and lack of probable cause, as well as a specific constitutional deprivation. Conversely, the court's language may simply describe the particular form of the claim proffered in *Goodwin* itself. If so, and given the court's reasoning in *Goodwin* as to why wrongful prosecution effects a constitutional deprivation, it may suffice simply to plead the usual elements of a § 1983 action—constitutional deprivation, under color of law, etc.—in the context of a defendant's participation in judicial proceedings for which he knows or ought to know there is no probable cause.[4] On the other hand, the Fourth Circuit has adopted at least one element of Virginia's cause of action for malicious prosecution for use in analogous § 1983 proceedings. *See Morrison v. Jones,* 551 F.2d 939 (4th Cir.1977) (favorable termination of criminal proceedings essential element of claim for malicious prosecution). At this juncture, this court need not decide this issue, for it finds that plaintiff has pleaded both the elements of malicious prosecution under Virginia law, and the requisite constitutional deprivation and, thus, states a § 1983 claim for wrongful prosecution under the heavy burden imposed by state law.

 In Virginia, to state a cause of action for malicious prosecution, a plaintiff must allege 1) that the prosecution was set on foot by the defendant and that it terminated in a manner not unfavorable to the plaintiff; 2) that it was instituted, or procured by the cooperation of the defendant; 3) that it was without probable cause; and 4) that it was malicious. *Oxenham v. Johnson,* 241 Va. 281, 402 S.E.2d 1 (1991); *see also Niese v. Klos,* 216 Va. 701, 222 S.E.2d 798 (1976). Entry of an order of *nolle prosequi* constitutes termination "in a manner not unfavorable to the plaintiff." *Niese,* 216 Va. at 703–704, 222 S.E.2d 798. Malice may be inferred from the absence of probable cause. *Oxenham,* 241 Va. at 288–89, 402 S.E.2d 1.

 Applying the foregoing standards to the instant action, the court finds that plaintiff has stated a claim for wrongful prosecution under § 1983. Certainly by alleging in his complaint that McDorman set up a drug transaction between plaintiff and the informant, Strother, and that the course of events ultimately resulted in the indictment being dismissed, plaintiff has met his burden of alleging that defendant commenced a prosecution that terminated favorably to plaintiff. Similarly, although defendant asserts that in Virginia, only the Commonwealth's Attorney may institute a prosecution upon an indictment, plaintiff has clearly alleged that such prosecution was procured by McDorman, whom plaintiff asserts concealed his knowledge of the lab results, and therefore the likely absence of probable cause, even as he appeared before the grand jury. This resulted in plaintiff's indictment, arrest, and prosecution. The procurement element here is similar, factually and legally, to that addressed in *Goodwin,* 885 F.2d at 161–62, where the inquiry centered on whether the defendant, by withholding exculpatory evidence as to the absence of probable cause, had wrongfully caused plaintiffs unfairly to be subjected to a criminal trial. This analysis defeats defendant's objection, levelled both at the § 1983 and malicious prosecution claim, that McDorman is not alleged to have actually, physically arrested plaintiff.

Plaintiff has also pleaded sufficiently the absence of probable cause, by alleging that the very substance supplying the basis for plaintiff's indictment for distribution of a controlled substance was not, in fact, a controlled substance, and that this fact was known to defendant at the time he sought to procure a prosecution by appearing before the grand jury. Plaintiff also has pleaded that the actions of the defendant were malicious, alleging that McDorman acted "for the sole purpose of having Lewis prosecuted for the felony charged in the indictment ..." *Complt.* Count I, para. 23. The fact of malice likewise may be inferred from the alleged absence of probable cause. Of course, plaintiff has asserted that McDorman acted in his capacity as a police officer, under color of

4. Such would fall precisely within the rationale of *Malley v. Briggs, supra.*

law, as required by § 1983, and he has alleged not only a deprivation of substantive due process, but also a more specific deprivation of his 4th amendment right to be secure against arrest absent probable cause. These alleged deprivations fit well within the standards set forth in *Goodwin* and *Cramer*.

Assessing plaintiff's § 1983 claim according to the above criteria clarifies the effect of *U.S. v. Williams, supra.,* on the instant action. In *Williams,* the Supreme Court held that it was not within a federal court's supervisory power to dismiss an indictment because the prosecution had failed, in violation of a circuit rule, to disclose substantially exculpatory evidence to the grand jury. *Williams* is, of course, factually distinguishable from the instant action, in that it deals with a court's authority to dismiss a criminal indictment, not with a plaintiff's right to recover civil damages for alleged constitutional deprivations. Although the Court was not specifically confronted with the issue, *Williams* nevertheless may be read as all but deciding that a citizen has no due process right under the 5th or 14th amendments to have exculpatory evidence presented to the grand jury. That is the reason that the court raised a question of its application here, and it is the principle for which defendant now cites it in this case to buttress his contention that plaintiff has failed to allege a constitutional deprivation.

In *Williams,* the Court dissected respondent's contention that federal courts possessed supervisory authority to dismiss indictments when the government fails to present exculpatory evidence to the grand jury. The Court first examined the grand jury's functional independence of both the executive and judicial branches. —— U.S. at —— ——, 112 S.Ct. at 1742–1743. The Court noted, *inter alia,* that the powers of the grand jury are broad in scope, enabling it to investigate on mere suspicion, to refuse to identify its targets or specify the wrongdoing it suspects, and to initiate investigations absent outside authority. —— U.S. at —— ——, 112 S.Ct. at 1742. The Court also recognized that in many of its precedents it refused various requests to supervise the grand jury, including requests to prohibit grand jury consideration of illegally seized evidence or hearsay. —— U.S. at —— ——, 112 S.Ct. at 1743–1744. From this the Court concluded that any power courts might have to supervise the grand jury was very limited, and it refused to permit reshaping the grand jury institution so as to alter substantially the relationship between courts, prosecutors, and the grand jury. —— U.S. at ——, 112 S.Ct. at 1744.

The Court then reasoned that dismissing indictments where the prosecution fails to present exculpatory evidence would seriously alter the grand jury's historical function as the recipient of inculpatory evidence only, as an institution immune from claims that it acted upon insufficient evidence, in short, as an accusatory, rather than adjudicatory body. —— U.S. at —— ——, 112 S.Ct. at 1736. For these reasons, the Court concluded that the rule which respondent asked the Court to uphold was not necessary to securing the right, reserved in the 5th amendment, to the judgment of an independent and informed grand jury. *Id.*

After careful thought, this court believes that *Williams* is simply inapposite. Plaintiff does not complain that defendant merely failed to present exculpatory evidence to the grand jury; rather, he claims that defendant intended much more, namely that plaintiff be prosecuted for a crime for which there was no probable cause, and that defendant took steps necessary to realize his intentions, including withholding from the grand jury his knowledge of the test results. In essence, plaintiff claims a constitutional right not to be knowingly arrested and subjected to prosecution without probable cause, a claim which, according to *Goodwin, supra.,* satisfies the pleading requirements of § 1983.

Defendant contends that even if plaintiff has stated a claim under § 1983, he is entitled to absolute witness immunity for claims arising out of his appearance before the grand jury, pursuant to the Supreme Court's ruling in *Briscoe v. La Hue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), the Fourth Circuit's ruling in *Burke v. Miller,* 580 F.2d 108 (4th Cir.1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1268, 59 L.Ed.2d 487 (1979), and the persuasive authority of other

circuits. In *Briscoe*, the Court accorded absolute witness immunity from liability under § 1983 to police officers alleged to have deprived plaintiff of due process by committing perjury at trial, noting that other circuits, including the Fourth Circuit in *Burke*, had already accorded such immunity. 460 U.S. at 328 n. 4, 103 S.Ct. at 1112 n. 4. Both cases relied upon the rationale of cases such as *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), that such immunity was necessary to avoid chilling witness testimony, lest self-censorship destroy the truth-finding function of judicial proceedings. *Briscoe*, 460 U.S. at 342–343, 345, 103 S.Ct. at 1119, 1120; *Burke*, 580 F.2d at 109–110.

 Those concerns do not apply with equal force here. Again, plaintiff would hold defendant liable not simply for withholding evidence from the grand jury, but for acting to further a prosecution that, after the return of the lab analysis, defendant knew lacked probable cause; a proceeding which, in light of defendant's knowledge, was entirely fraudulent. The elements of a claim for wrongful prosecution, especially the favorable termination requirement, malice, and absence of probable cause, differentiate the instant action from the case where an isolated witness, or witnesses in concert, commit perjury or withhold evidence from the grand jury. The latter case, of course, raises all of the self-censorship concerns adduced in *Briscoe* to support absolute witness immunity. It is difficult, however, to discern how the court risks witness self-censorship by declining to extend such immunity to those who would initiate or abet a wrongful prosecution. Thus, the court finds that defendant may not avail himself of *Briscoe* immunity in this case.

 Because the court has found that plaintiff has sufficiently pleaded the elements of a state law cause of action for malicious prosecution in analyzing his § 1983 claim, it is clear that he also states a claim, in Count II of his complaint, for the state law tort itself. To the extent that Count II is denominated a claim for both "False Imprisonment and Malicious Prosecution," the court construes it as a single claim for malicious prosecution.

 The court will, however, sustain defendant's motion as to Count III for willful and wanton negligence. Plaintiff has cited no authority for the existence, under Virginia law, of a duty upon police officers to exercise reasonable care in conducting investigations or in playing a role in prosecutions. It is the court's view that no such duty exists and that Virginia simply has never recognized a cause of action based on negligent investigations or prosecution. McDorman's conduct either amounted to malicious prosecution, with its constitutional effects, or it was not actionable under Virginia law.

Finding that plaintiff has stated a claim in Counts I and II of his second amended complaint, but that he has failed to state a claim in Count III of said complaint, an order will this day enter DENYING defendant's motion to dismiss as to Counts I and II, and GRANTING defendant's motion to dismiss as to Count III.