*252 FLOYD, Circuit Judge,
concurring:
I agree with the majority’s ultimate resolution of this ease on qualified immunity grounds. However, because this case raises concerns for me regarding this Court’s Fourth Amendment case law, and because I question the manner in which the majority disposes of the state law claims, I find it necessary to write separately.
I.
The majority rightly concludes that there is no clearly established law which Officer Stephanie Rodriguez could be said to have violated. Thus, she is entitled to qualified immunity under our familiar two-step sequence where we determine (1) whether there has been a violation of a constitutional right, and (2) whether that right was “clearly established” at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). The majority reaches this conclusion by taking the analysis out of order — which courts are permitted to do[1] — and does not ultimately decide whether there has been a violation of a constitutional right.
Although I agree with the majority’s conclusion, its analysis reveals aspects of this Circuit’s Fourth Amendment case law that cause me great concern. As is familiar and oft-repeated by the Supreme Court, “the Fourth Amendment’s ultimate touchstone is ‘reasonableness.’ ” Brigham City v. Stuart, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (citations omitted). The seizures that occurred when Plaintiffs Jan Eshow and Fadwa Safar were arrested strike me as manifestly unreasonable. The affiant for their warrants, Officer Rodriguez, was aware that probable cause for their arrests had entirely dissipated.[2] Yet, she did nothing to initiate any recall of the arrest warrants or to inform the Commonwealth’s Attorney’s Office that the information on which she relied to obtain the warrants was entirely undermined. I believe that the Fourth Amendment mandates that when probable cause for an outstanding arrest warrant wholly disap *253 pears and the affiant is aware, the affiant has a duty to take steps to rescind the warrant.
My belief that a seizure pursuant to a warrant for which probable cause has entirely dissipated is unreasonable under the Fourth Amendment is not novel. Multiple justices of the Supreme Court have recognized this point, albeit in opinions that have no binding force of law, as have several of our sister circuits.
In United States v. Watson, 423 U.S. 411, 414-24, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), the Supreme Court addressed the constitutionality of a statute authorizing a warrantless arrest even in the absence of exigent circumstances. In a concurring opinion, Justice Powell acknowledged that permitting only warrant-based arrests and warrantless arrests limited to exigent circumstances would be problematic. Id. at 431, 96 S.Ct. 820 (Powell, J., concurring). He explained that officers attempting to meet such a standard who “procur[ed] a warrant as soon as they had probable cause and then merely held it during their subsequent investigation ... would risk a court decision that the warrant had grown stale by the time it was used.” Id. (emphasis added). Justice Powell further noted that “in some cases the original grounds supporting the warrant could be disproved by subsequent investigation” which would cause the warrant to “be stale because [it was] based upon discredited information.” Id. at 431 n.5, 96 S.Ct. 820 (emphasis added).
Justice Marshall, joined by Justice Brennan in dissent, also recognized this problem, stating that “probable cause to arrest, once formed, will continue to exist for the indefinite future, at least if no intervening exculpatory facts come to light.” Id. at 449, 96 S.Ct. 820 (Marshall, J., dissenting) (emphasis added). Although Justice Marshall noted that “it is virtually impossible for probable cause to become stale between procurement [of a warrant] and arrest,” id. at 451, 96 S.Ct. 820, he explained that “it should be obvious that when the probable cause supporting a warrant no longer exists, the warrant is void and the suspect cannot be arrested,” id. at 452 n.18, 96 S.Ct. 820.
Other Supreme Court Justices have also recognized the possibility of an arrest warrant becoming stale due to exculpatory evidence coming to light before the execution of the warrant. See Payton v. New York, 445 U.S. 573, 619, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (White J., dissenting, joined by Burger, C.J., and Rehnquist, J.).
Our sister circuits, in both published and unpublished opinions, have also recognized this possibility. See United States v. Bizier, 111 F.3d 214, 219-20 (1st Cir. 1997) (noting that “probable cause would grow stale only if it emerges that it was based on since discredited information,” but reasoning that the opposite happened in the case at bar (citing Watson, 423 U.S. at 432 n.5, 96 S.Ct. 820 (Powell, J., concurring))); Russell v. Devereaux, 389 Fed.Appx. 557, 560 (7th Cir. 2010) (noting that “probable cause to make an arrest grows ‘stale only if it emerges that it was based on since discredited information’ ” in rejecting a claim that probable cause was stale because nearly a year had passed between investigation and arrest (quoting Bizier, 111 F.3d at 219)); United States v. Henderson, 613 F.3d 1177, 1181 (8th Cir. 2010) (noting similarly, but finding no intervening exculpatory act); United States v. Ortiz-Hernandez, 427 F.3d 567, 574 (9th Cir. 2005) (“If probable cause is established at any early stage of the investigation, it may be dissipated if the investigating officer later learns additional information that decreases the likelihood that the defendant has engaged, or is engaging, in criminal activity. A person *254 may not be arrested, or must be released from arrest, if previously established probable cause has dissipated.”); United States v. Edwards, 682 F.3d 633, 640 (10th Cir. 2001) (holding that “[i]f the police learn information that destroys their probable cause to arrest a defendant, the arrest may become illegal,” but finding police had sufficient evidence to believe an offense had occurred.). The Tenth Circuit has recently reaffirmed its belief in this position. See United States v. Lopez, 849 F.3d 921, 929 (10th Cir. 2017) (relying on Edwards to find that an officer could not detain a driver for driving without a license once informed by the dispatcher that the driver had a valid license where the statute prohibited conviction if the driver is able to present the valid license in court).
The duty I envision would be limited to those extreme cases where probable cause has completely dissipated, a question we ask police officers to evaluate every day in the context of warrantless arrests. Cf. Graham v. Gagnon, 831 F.3d 176, 184 (4th Cir. 2016) (“Whether probable cause exists in a particular situation always turns on two factors in combination: the suspect’s conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.” (internal quotation marks and alterations omitted)). Thus, it would not be a departure to require an officer, having sworn under oath to facts in support of a warrant application, to have a responsibility to inform the court when the facts have so drastically changed as to eliminate all probable cause prior to the execution of the warrant the officer sought.[3]
Although I believe that the Fourth Amendment mandates such a duty, I recognize that announcing such a duty in this case would stand in tension with our decisions in Taylor v. Waters, 81 F.3d 429 (4th Cir. 1996) and Brooks v. City of Winston-Salem, N.C., 85 F.3d 178 (4th Cir. 1996), as the majority notes. See ante at 247-48.[4] I fear that the holdings in these cases are overbroad, and ultimately stray too far from their facts in appearing to establish a bright line rule that all potential liability for an officer cuts off at the moment of a warrant being issued, absent a materially false statement or material omission in the warrant application. See Miller v. Prince George’s Cty., Md., 475 F.3d 621, 627-28 (4th Cir. 2007) (holding that an officer cannot intentionally or with reckless disregard for the truth make materially false *255 statements or omit material facts from an arrest warrant affidavit).
If we adhere to the idea of reasonableness in understanding the Fourth Amendment, as we must, then the holdings of Taylor and Brooks appear to be in tension with that idea. Thus, I write separately to note this problem in the hopes that a future en banc court may have the chance to consider the impact of Taylor and Brooks and considerably narrow the scope of their holdings.
II.
Next, I agree with my colleagues in the majority that the district court was incorrect to adjudicate Plaintiffs state law gross negligence claims on the grounds that Virginia state law recognizes no duty for negligent investigation.[5] However, I write separately to note two issues: (1) the federal cases relied upon by the district court regarding the existence of a duty under Virginia state law include no citations to Virginia state law, and should be viewed by future courts with great skepticism; and (2) the manner in which this Court is disposing of this issue requires clarification.
A.
The district court relied on a series of three cases to support the proposition that “Virginia does not recognize a cause of action for the negligent investigation or incorrect initiation of criminal process.” Safar v. Tingle, 178 F.Supp.3d 338, 352 (E.D. Va. 2016); see id. at 352 & n.13 (citing Boyce v. Bennett, No. 2:14-cv-249, 2015 WL 6873547, at *8 (E.D. Va. Nov. 9, 2015); Durham v. Horner, 759 F.Supp.2d 810, 815 (W.D. Va. 2010); Lewis v. McDorman, 820 F.Supp. 1001, 1008 (W.D. Va. 1992), aff'd on other grounds 28 F.3d 1210 (4th Cir. 1994) (unreported table decision)). The problem is that not one of these cases cites to any Virginia state law.
• In the oldest of these three cases, Lewis, in dismissing a claim against a detective for willful and wanton negligence, the court stated — without citation — that there is no “duty upon police officers to exercise reasonable care in conducting investigations or in playing a role in prosecutions.” Lewis, 820 F.Supp. at 1008. The court faulted the plaintiff for failing to cite any cases in support, but went on to explain that it was the court’s view that “no such duty exists and that Virginia simply has never recognized a cause of action based on negligent investigations or prosecution.” Id. Relying exclusively on Lewis, the court in Durham similarly held that “Virginia law recognizes no such cause of action against police officers for conducting investigations.” Durham, 759 F.Supp.2d at 815 (citing Lewis, 820 F.Supp. at 1008). Finally, the court in Boyce relied solely on Lewis and Durham for the proposition that there was no “viable state-law ‘gross negligence’ cause of action against a city police officer for negligent investigation and/or negligent production of investigative materials.” Boyce, 2015 WL 6873547, at *7 (citing Durham, 759 F.Supp.2d at 815; Lewis, 820 F.Supp. at 1008) (emphasis omitted).[6]
*256 It is true that no Virginia case cited by the parties on this appeal encompasses this factual scenario. But it is equally true that no Virginia case stands for the proposition that no such cause of action exists. A federal court sitting in diversity or hearing pendent state law claims pursuant to 28 U.S.C. § 1367 must “apply the governing state law, or, if necessary, predict how the state’s highest court would rule on an unsettled issue.” Horace Mann Ins. Co. v. Gen. Star Nat’l Ins. Co., 514 F.3d 327, 329 (4th Cir. 2008) (citation omitted); see also S. Atl. Ltd. P’ship of Tenn., L.P. v. Riese, 284 F.3d 518, 530 n.15 (4th Cir. 2002) (“With respect to the various supplemental state law claims, we apply the substantive law of the state under which the claims were filed.... ” (citation omitted)).
Without an underlying citation to Virginia state court decisions, treatises, or any other authority, this daisy chain of citations of district court cases that relies on no citations to Virginia state law cannot reasonably be understood to accurately depict the state of Virginia law. Indeed, a different district court case has permitted a gross negligence claim for negligently conducting an investigation to survive past summary judgment, albeit without expressly finding that a duty to properly conduct an investigation exists. Savage v. Cty. of Stafford, Va., 754 F.Supp.2d 809, 817 (E.D. Va. 2010), aff'd on other issues, 488 Fed.Appx. 766 (4th Cir. 2012) (per curiam). In fact, the claim was tried, given to the jury to decide, and the jury then found in favor of the police officer defendant. See Jury Verdict at 2, Savage v. Cty. of Stafford, Va., No. 09-cv-1328 (E.D. Va. Apr. 20, 2011), ECF No. 211. As such, I doubt the veracity of the claim made in Lewis, Durham, and Boyce, and have grave doubts about the continued viability of citing to this trio of cases for the proposition that no claim for gross negligence in conducting an investigation can exist. Instead, I find this state law question unanswered by Virginia authority.
B.
Turning next to how we have resolved this issue, in the absence of guidance from the state courts, we would ordinarily certify an unsettled question of law to the state’s highest court if the state so permits. See, e.g., C.F. Trust, Inc. v. First Flight Ltd. P’ship, 306 F.3d 126, 141 (4th Cir. 2002) (certifying two questions to the Supreme Court of Virginia in the absence of sufficient information to determine whether Virginia law would permit reverse veil-piercing against a limited partnership). The Court has not done that-today, instead remanding the case to the district court with instructions to dismiss the state law claims without prejudice so Plaintiffs may pursue their state law claims in state court. However, the Court has not clearly identified the basis for this action.
We have, in a case where the defendant removed a case originally filed in state court to federal court, vacated the district *257 court’s judgment on the state law claims and remanded with instructions for the district court to remand the state law claims to the state court where “[t]he questions presented ... are relatively novel, complex and of great local importance.” Fox v. Custis, 712 F.2d 84, 89-90 (4th Cir. 1983) (cited by the majority, ante at 251-52). And indeed, we have recognized that in declining supplemental jurisdiction under 28 U.S.C. § 1367(c), “a court may dismiss the claim or, if it was removed, remand it to State court.” Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 616 (4th Cir. 2001) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).
Additionally, our case law makes clear that when a district court declines to exercise supplemental jurisdiction pursuant to § 1367(c), that decision is reviewed for abuse of discretion. Jordahl v. Democratic Party of Va., 122 F.3d 192, 203 (4th Cir. 1997); see also Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) (“The doctrine of supplemental jurisdiction ‘thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values.’ ” (quoting Carnegie-Mellon, 484 U.S. at 350, 108 S.Ct. 614)). We then evaluate that decision based on the factors listed in statute: “whether the State claims involve novel or complex issues of State law; whether State law claims predominate; whether the federal claims justifying the court’s jurisdiction remain! ] in the case; or other compelling reasons.” Hinson, 239 F.3d at 617.
What we are presented with in this case is the opposite situation — the district court opted to exercise jurisdiction rather than decline it — and now we are reviewing that decision. It appears that we are effectively, through the majority’s holding and our Court’s case law, imposing an abuse of discretion review on a district court that chooses to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 rather than decline it under § 1367(c). And it appears that we are using the same factors by which we evaluate discretion to decline jurisdiction to evaluate discretion to exercise jurisdiction. I have no qualms with doing so; however, I believe we do a disservice to future litigants and the District Judges of this Circuit if we are not so clear in what we are doing.[7]
III.
The circumstances of this case are both tragic and entirely avoidable. The district court recognized this in dismissing the complaint:
[T]he legal conclusion reached is not intended to excuse Arlington County from failing to take action it should have taken to avoid the unjust arrests, including a more diligent investigation and requesting to withdraw meritless arrest warrants. Notwithstanding the [findings on immunity], most fair-minded people would conclude that it would be appropriate — indeed, even necessary — for Arlington county to extend to [Pjlaintiffs a formal and sincere apology for what occurred, and perhaps that legislative re *258 lief in the form of a special bill would be appropriate here.
Safar, 178 F.Supp.3d at 358 (citation omitted). I echo these sentiments here, but must concur in the judgment of my colleagues that if any duty for Officer Rodriguez existed, it was not clearly established.

. In the same case permitting courts to take the qualified immunity analysis out of order, the Supreme Court also recognized that it is “often appropriate” and "often beneficial” to conduct the inquiry in order. Pearson, 555 U.S. at 236, 129 S.Ct. 808. This is so because “the two-step procedure promotes the development of constitutional precedent and is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable.” Id. Thus, as the Court has acknowledged, failure to define the contours of the constitutional duty at the first step of the qualified immunity analysis leaves the law undeveloped, leaves officers without notice of how they are expected to perform their duties in compliance with the Constitution, and leaves future plaintiffs without recourse due to the absence of any clearly established law.

. Probable cause in this case was formed when Officer Rodriguez responded to a call from Costco at approximately 9:15pm on October 17, 2012. J.A. 65. Upon arrival, she spoke exclusively with the Costco store manager, listened to his description of the incident, and watched video footage provided by him. Id. The only outside investigative work Officer Rodriguez conducted was to confirm the identities of Plaintiffs through their Costco membership and through Maryland DMV records. Id. Relying on this evidence, at 11:18pm and 11:21pm — approximately two hours after first responding to Costco — Officer Rodriguez provided sworn testimony to a magistrate in Arlington County to obtain two felony arrest warrants for Plaintiffs. J.A. 66-69. Then, at some point the next day, October 18, 2012, a representative from Costco contacted Officer Rodriguez to inform her that the allegations were mistaken and that no fraud had actually occurred. Thus, because Costco’s complaint was the sole source of probable cause, the retraction of this complaint caused all probable cause to dissipate.

. To the extent concerns arise about the implications of this duty in the context of exclusion of evidence in a criminal case, the existence of a Fourth Amendment violation does not necessarily mean that evidence is excluded, as the good faith exception to the exclusionary rule often provides safe harbor. See, e.g., Herring v. United States, 555 U.S. 135, 140-47, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) (accepting the parties’ agreement that the Fourth Amendment was violated when the defendant was arrested pursuant to a warrant incorrectly listed as active in a computer database, but ultimately finding that the exclusionary rule did not bar any evidence obtained incident to the search due to the arresting officer’s good faith belief that the warrant was valid).

. Officer Rodriguez also points to the fact that an officer has no duty to investigate every exculpatory lead before establishing probable cause. See, e.g., Torchinsky v. Siwinski, 942 F.2d 257, 264 (4th Cir. 1991). This is both unremarkable and inapposite. Neither I nor the Plaintiffs suggest that Officer Rodriguez was required to undertake a more searching investigation before seeking the warrants, or even continue investigating after the warrants were obtained. But I do not believe Officer Rodriguez could then ignore information that entirely negated probable cause after the warrant was obtained on the basis that she had no duty to investigate.

. In doing so, I understand that we are vacating the portion of the district court’s decision finding that the prosecutor was protected by absolute immunity on the state claims. It is worth noting that the Supreme Court of Virginia has expressly disavowed Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and its progeny for defining the contours of prosecutorial immunity under Virginia state law. Andrews v. Ring, 266 Va. 311, 585 S.E.2d 780, 785 (2003). I do not understand the district court's holdings on state law to be binding on the parties should they choose to litigate the matter in the future in state court.

. The court in Boyce also addressed the fact that Virginia appears to disfavor malicious prosecution claims arising from criminal proceedings, which it found "suggests a reason why Virginia courts may treat investigative tort actions against police officers differently.” Id. at *8 n.11 (citing Ayyildiz v. Kidd, 220 Va. 1080, 266 S.E.2d 108, 110 (1980)). However, it is worth noting that an earlier ruling in Boyce relied on cases other than Lewis and Durham to find that "no Virginia court has explicitly held” that a duty to conduct a competent investigation exists. See Boyce v. Bennett, No. 2:14-cv-249, 2014 WL 12561596, at *5-6 (E.D. Va. Nov. 3, 2014) (finding that state and federal cases on which plaintiff attempted to rely were all resolved without addressing the existence of a duty, and thus were inapposite as they failed to "explicitly” hold that a duty existed).

. Without this clarity, we may appear to be endorsing an improper abstention path which would go against our “virtually unflagging obligation ... to exercise the jurisdiction given [us].” Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (citations omitted); see also Wohl v. Keene, 476 F.2d 171, 174 (4th Cir. 1973) (“Abstention is not appropriate solely to avoid the decision of difficult state law questions.” (citations omitted)). I do not understand the majority to be doing this.