885 F.2d 157
 James Kenneth GOODWIN; Eddie Earl Hallman, Plaintiffs-Appellees,
v.
James R. METTS, individually and in his official capacity as
Sheriff of Lexington County, South Carolina; Vernon O.
Maxwell, individually and in his official capacity as a
Lexington County Deputy Sheriff, Defendants-Appellants,
and
Ralph Bishop, individually and d/b/a Bishop Salvage Company,
Defendant.
 No. 88-2135.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 13, 1989.
Decided Sept. 12, 1989.
Rehearing and Rehearing In Banc Denied Nov. 28, 1989.
 
 Harold Weinberg Jacobs (David B. Summer, Jr., Nexsen, Pruet, Jacobs & Pollard, Columbia, S.C., on brief), for defendants-appellants.
 Lex A. Rogerson, Jr., Lexington, S.C. (John R. Delgado, Furr & Delgado, Herbert W. Louthian, Louthian & Louthian, Columbia, S.C., Armand Derfner, Armand Derfner, P.A., Charleston, S.C., on brief), for plaintiffs-appellees.
 Before RUSSELL and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 After a jury trial, Vernon O. Maxwell was held liable for wrongful prosecution under 42 U.S.C. Sec. 1983. The jury found Maxwell and James R. Metts liable for common law malicious prosecution. It awarded compensatory damages to the plaintiffs, James Kenneth Goodwin and Eddie Earl Hallman, and assessed punitive damages against Maxwell. Metts and Maxwell appeal from the district court's denial of their motions for judgment notwithstanding the verdict and for a new trial. We set aside the verdict for punitive damages because the evidence does not justify it. We otherwise affirm the judgment of the district court.
 
 
 2
 * Goodwin and Hallman were arrested by Lexington County, South Carolina, sheriff's deputies in connection with a break-in that occurred on the weekend of April 29, 1983, at the house of their employer, Ralph Bishop. They were charged with grand larceny. Maxwell was the investigating officer in the case.
 
 
 3
 Between arraignment and trial, two discoveries cast doubt on whether there continued to be probable cause to believe that Goodwin and Hallman actually had committed the break-in. The warrant under which Goodwin and Hallman had been arrested was issued largely because of a statement given by a "Terry Nelson," which was the principal evidence directly linking them to the break-in. Sheriff's deputies discovered, however, that "Nelson" had provided them with a false name and address, and they were unable to locate him. More importantly, about one month before Goodwin's and Hallman's trial, Michael Stafford was arrested in a neighboring jurisdiction and confessed to a series of break-ins at Bishop's house. Maxwell prepared a report on the Bishop break-ins, including the one of which Goodwin and Hallman were accused, indicating that all of the break-ins had been "cleared" by Stafford's confession. He added Stafford's name as a suspect to an incident report concerning the break-in for which Goodwin and Hallman were about to stand trial. Maxwell did not, however, inform anyone in the sheriff's department or county solicitor's office that he had connected Stafford with the Bishop break-in.
 
 
 4
 Even without knowing of Stafford's confession, the county solicitor was reluctant to permit the case against Goodwin and Hallman to proceed to trial, due to its perceived weakness. He declined to permit any member of his office to prosecute the case. Instead, a lawyer who had represented Bishop in civil matters prosecuted the case. He did so after conferring with Maxwell, who did not mention that Stafford had confessed to the break-in for which Goodwin and Hallman were charged. Maxwell did not disclose that he had cleared the records of the Goodwin-Hallman case by attributing the break-in to Stafford only two weeks earlier. After a jury trial in state court, Goodwin and Hallman were acquitted.
 
 
 5
 Goodwin and Hallman then brought this action, asserting various state and federal claims against Maxwell; John T. Vaughn, Maxwell's partner; Metts, the Lexington County sheriff; and Bishop. The district court directed a verdict in favor of Vaughn and submitted to the jury four claims against Maxwell, Metts, and Bishop.
 
 
 6
 The claims submitted to the jury alleged that the defendants were liable to Goodwin and Hallman for wrongful arrest and wrongful prosecution in violation of 42 U.S.C. Sec. 1983 and for the pendent state law torts of malicious prosecution and intentional infliction of emotional distress. The jury found in favor of Bishop on all claims and in favor of Maxwell and Metts on the wrongful arrest and emotional distress claims. It held Maxwell and Metts liable for malicious prosecution and held Maxwell liable for wrongful prosecution under section 1983.[1] It awarded $60,000 compensatory damages to Goodwin, $90,000 compensatory damages to Hallman, and imposed $175,000 punitive damages against Maxwell.
 
 II
 
 7
 Maxwell and Metts contend that they are entitled to judgment notwithstanding the verdict on the malicious prosecution claim and that Maxwell is entitled to judgment on the section 1983 claim. They argue that Maxwell's knowledge of Stafford's confession and the false identity and unavailability of the witness "Nelson" did not negate probable cause to believe that Goodwin and Hallman committed the Bishop break-in. Maxwell maintains that Stafford's confession did not exculpate Goodwin and Hallman. He characterizes the problem with "Nelson's" statement as one merely of witness unavailability, for which he cannot be held responsible. Maxwell asserts that the details of Stafford's confession were so dissimilar to the break-in of which Goodwin and Hallman were accused that he still had probable cause to believe in their guilt even after he heard of Stafford's statement, especially in view of his conclusion that the first Bishop break-in was an "inside job."
 
 
 8
 In reviewing the denial of a motion for judgment notwithstanding the verdict, we assess "the evidence and all reasonable inferences from it ... in the light most favorable to the non-moving party ... and the credibility of all evidence favoring the non-moving party is assumed." Crinkley v. Holiday Inns, Inc., 844 F.2d 156, 160 (4th Cir.1988). If there is "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment could reasonably return a verdict for the nonmoving party," the jury verdict should be sustained. Wyatt v. Interstate & Ocean Transp. Co., 623 F.2d 888, 891 (4th Cir.1980).
 
 
 9
 There was substantial testimony that, before the trial of Goodwin and Hallman, Maxwell knew that the putative witness "Nelson" had provided a false name and address and could not be located. Moreover, it was reasonable for the jury to find that, based upon Stafford's confession, Maxwell knew or should have known, by the time of the criminal trial, that Goodwin and Hallman did not commit the break-in. Maxwell's insistence that Stafford's confession did not exculpate Goodwin and Hallman was rejected by the jury based upon substantial evidence. A police officer who initially investigated the crime reported that the criminal had forcibly entered Bishop's house. This was contrary to Maxwell's theory of an inside job but consistent with Stafford's confession. Stafford broke into the house three or four times, but only in the first break-in did he steal a number of checks which he later burned. He was corroborated by the fact that the checks never were presented for payment. At no other time were checks stolen from Bishop's house. The first break-in when the checks were stolen, to which Stafford confessed, is the same crime Maxwell attributed to Goodwin and Hallman. Significantly, Maxwell's assertion is also belied by the fact that he cleared the record of the break-in, indicating Stafford's culpability, after learning of the confession.
 
 
 10
 Maxwell essentially seeks to retry on appeal the jury's factual determinations. But this court "is not free to ... substitute its judgment of the facts for that of the jury." Aloe Coal Co. v. Clark Equip. Co., 816 F.2d 110, 113 (3d Cir.1987). We will disturb the jury's verdict " 'only if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.' " 816 F.2d at 113. Viewed in the light most favorable to Goodwin and Hallman, the evidence supports the jury's finding that Maxwell lacked probable cause to believe they were guilty after he learned of "Nelson's" false statements and the Stafford confession.
 
 III
 
 11
 Maxwell and Metts contend they are entitled to judgment notwithstanding the verdict, even if there was no probable cause to prosecute Goodwin and Hallman. Maxwell lacked the power to discontinue the prosecution, they argue, and thus cannot be held liable for its continuation. As an investigating officer, Maxwell maintains, his duty extended only to an initial determination of probable cause and did not include any obligation to disclose exculpatory information acquired after the initiation of criminal proceedings.
 
 
 12
 We cannot accept this argument. Under South Carolina law, liability for malicious prosecution arises from wrongful "institution or continuation of original judicial proceedings." Eaves, 277 S.C. at 477, 289 S.E.2d at 415 (emphasis added). Liability extends to anyone who "instituted a criminal action against plaintiff, or had caused one to be maintained or had voluntarily aided or assisted in its prosecution." Gibson v. Brown, 245 S.C. 547, 550, 141 S.E.2d 653, 654-55 (1965).
 
 
 13
 By his role in the investigation, Maxwell voluntarily assisted in the actionable continuation of the prosecution of Goodwin and Hallman. The evidence shows that the county solicitor was extremely reluctant to allow the case to go to trial, that Bishop's private lawyer decided to prosecute only after conferring with members of the sheriff's department, including Maxwell, and that Maxwell did not disclose the exculpatory information to the private prosecutor. The private prosecutor testified that, had the personnel in the sheriff's department said it was not "a winnable case," he would have told the solicitor, "and I am quite sure he would have nol prossed the case." The jury reasonably could infer that, had the private prosecutor been told of the facts negating probable cause, he would have declined to prosecute, and the solicitor would have nol prossed the case.
 
 
 14
 In South Carolina, only the solicitor can nol pros a case.[2] Maxwell lacked authority to terminate the prosecution. Nevertheless, he could be found liable for continuation of the prosecution if the deliberations of the private prosecutor "were in some way tainted by [his] actions." Hand v. Gary, 838 F.2d 1420, 1428 (5th Cir.1988). A police officer who withholds exculpatory information from the prosecutor can be liable under both section 1983 and the state common law. The issue is causation. Maxwell contends that he did not cause the prosecution to continue because only the solicitor had the power either to go forward with the case or terminate it.
 
 
 15
 In Jones v. City of Chicago, 856 F.2d 985 (7th Cir.1988), police officers who withheld exculpatory evidence made the same argument Maxwell presses. In a carefully reasoned opinion, Judge Posner, writing for the court, rejected this argument, explaining:
 
 
 16
 In constitutional-tort cases as in other cases, "a man [is] responsible for the natural consequences of his actions." Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961). This principle led the Supreme Court in Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), to hold that the issuance of an arrest warrant will not shield the police officer who applied for the warrant from liability for false arrest if "a reasonably well-trained officer in [his] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." Id. at 345, 106 S.Ct. at 1098 (footnote omitted). The Court was speaking of immunity but its discussion is equally relevant to causation, as indeed is implied in a footnote to the Court's opinion. See id. at 344 n. 7, 106 S.Ct. at 1098 n. 7. By parallel reasoning, a prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial--none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision.
 
 
 17
 It is true that at some point after a person is arrested, the question whether his continued confinement or prosecution is unconstitutional passes over from the Fourth Amendment to the due process clause (and after conviction to the Eighth Amendment's cruel and unusual punishments clause, but that is not relevant here). But the causal inquiry is unchanged. If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him.
 
 
 18
 Jones, 856 F.2d at 993 (citations omitted); accord Lusby v. T.G. & Y. Stores, Inc., 749 F.2d 1423, 1431 (10th Cir.1984), vacated on other grounds, 474 U.S. 805, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985); Wheeler v. Cosden Oil & Chem. Co., 734 F.2d 254, 260 (5th Cir.), modified on denial of reh'g, 744 F.2d 1131 (5th Cir.1984).
 
 
 19
 In Clarke v. Montgomery Ward & Co., 298 F.2d 346, 348 (4th Cir.1962), this court said:
 
 
 20
 A person who places before a prosecuting officer information upon which criminal proceedings are begun, and who later acquires additional information casting doubt upon the accused's guilt, should be under an obligation to disclose his discovery to the prosecutor. It should be no defense that the accuser acted in good faith in initiating the prosecution, if he remains silent and allows it to go on when he later learns that he was in error.
 
 
 21
 298 F.2d at 348.
 
 
 22
 Maxwell cannot escape liability merely because he could not unilaterally have terminated the prosecution of Goodwin and Hallman. A jury reasonably could find that his actions and omissions caused the two men unfairly to be subjected to a criminal trial.
 
 IV
 
 23
 Maxwell raises additional claims of error with respect to the section 1983 claim, on which he alone was found liable. He contends that he is entitled to judgment notwithstanding the verdict because Goodwin and Hallman suffered no injury of constitutional magnitude as a result of being prosecuted. Goodwin and Hallman were not incarcerated during the pendency of the criminal charges but were freed on bond immediately after booking and remained free throughout the grand jury proceedings and trial. Maxwell asserts that they suffered no liberty or due process deprivation cognizable under section 1983. He argues that Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), and Cramer v. Crutchfield, 648 F.2d 943 (4th Cir.1981) (per curiam), establish that injuries of the kind suffered by Goodwin and Hallman cannot be grounds for a section 1983 claim.
 
 
 24
 Maxwell's argument cannot withstand analysis. In Cramer, we held that a plaintiff proceeding under section 1983 must allege a constitutional deprivation, but we did not exclude the possibility that a wrongful prosecution might give rise to a section 1983 claim, nor did we analyze the circumstances in which it would. See 648 F.2d at 945-46. In Baker, to be sure, the plaintiff had been negligently jailed for several days, pursuant to a facially valid warrant, due to mistaken identity, and the Supreme Court held that he was not thereby deprived of due process of law. See 443 U.S. at 141-46, 99 S.Ct. at 2693-95. The conclusion does not follow, however, that because they were not incarcerated, Goodwin and Hallman could not have been denied due process. Unlike the plaintiff in Baker, they were subjected to trial on serious criminal charges, and faced the possibility, if convicted, of lengthy periods of incarceration, with the attendant uncertainties and anxieties suggested by that prospect. They suffered this injury because of Maxwell's failure to disclose exculpatory information to the solicitor or the private prosecutor.
 
 
 25
 Whether a criminal defendant is incarcerated is not decisive in determining if he has suffered an abridgment of constitutional rights. Being subjected to a prosecution because an officer withheld exculpatory evidence from the prosecutor while urging that the prosecution should go forward can work a constitutional deprivation. As the Third Circuit has held in an analogous situation,
 
 
 26
 [a]n abuse of process is by definition a denial of procedural due process.... The injuries allegedly caused by defendants' actions include the deprivation of liberty concomitant to arrest and to the pendency of a criminal process, whether the plaintiff was in jail, released on bail, or released on his own recognizance. Such deprivations without due process state an injury actionable under section 1983.
 
 
 27
 Jennings v. Shuman, 567 F.2d 1213, 1220 (3d Cir.1977). See also United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971); Klopfer v. North Carolina, 386 U.S. 213, 221-22, 87 S.Ct. 988, 992-93, 18 L.Ed.2d 1 (1967); Shaw v. Garrison, 467 F.2d 113, 120-22 (5th Cir.1972).
 
 
 28
 In Marion, the Supreme Court explained the injurious consequences of a wrongful arrest; the same reasoning applies to a wrongful prosecution. Like an arrest, a prosecution is "a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." Marion, 404 U.S. at 320, 92 S.Ct. at 463. The injuries proved by Goodwin and Hallman are of constitutional magnitude.
 
 V
 
 29
 Maxwell also argues that he is entitled to qualified immunity on the section 1983 claim. He asserts that the district court erroneously failed to make an independent assessment of the reasonableness of his conduct and instead relied solely on the jury's determination that he lacked probable cause to seek continuation of the prosecution.
 
 
 30
 "[T]he test for qualified immunity for executive officers is one of 'objective legal reasonableness'--whether an official acting under the circumstances at issue reasonably could have believed that his action did not violate the constitutional rights asserted." Sevigny v. Dicksey, 846 F.2d 953, 956 (4th Cir.1988) (citation omitted). "The contours of the right [violated by the officer] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In Sevigny, we explained that, where the jury has determined that the officer lacked probable cause, he "might still be entitled to immunity if, on an objective assessment of the circumstances, an officer situated as was he reasonably could have believed there was probable cause...." 846 F.2d at 956.
 
 
 31
 Contrary to Maxwell's assertion, the district court considered his qualified immunity claim under correct principles of law and properly rejected it. A reasonable officer would have known that "Nelson's" statement was of dubious value and that Stafford's confession was at least potentially exculpatory. He would have realized that both public and private prosecutors would have been disinclined to pursue the case against Goodwin and Hallman had they known that Maxwell had recorded that Stafford's confession cleared the crime with which the two men were charged. A reasonable officer would have known that a prosecution carried out without probable cause or disclosure of exculpatory information would violate the constitutional rights of the criminal defendants. An officer cannot invoke qualified immunity where he "did not avail himself of readily available information that would have clarified matters to the point that [the criminal charges] would have been flatly ruled out as factually unsupportable." Sevigny, 846 F.2d at 957-58.
 
 
 32
 By permitting the prosecution of Goodwin and Hallman to proceed after clearing the case file with Stafford's confession, Maxwell was acting on mutually inconsistent factual theories. A reasonable officer would have known that this made the existence of probable cause unlikely. See Sevigny, 846 F.2d at 957. Maxwell's conduct was objectively unreasonable and cannot be shielded by qualified immunity.
 
 VI
 
 33
 Maxwell and Metts argue that they are entitled to a new trial on the question of compensatory damages. They claim that the jury was influenced by improper and prejudicial argument and that the compensatory damage verdict is excessive as a matter of law. They also suggest that they were prejudiced by argument pertaining to income lost by Goodwin and Hallman due to leaving Bishop's employ, because the district court failed to give a special jury instruction on this point.
 
 
 34
 Counsel for Goodwin and Hallman does not dispute that he referred briefly to lost wages evidence during his summation. But we do not perceive that Maxwell and Metts thereby were prejudiced. The district court carefully instructed the jury that it could award against each defendant only those damages proximately caused by that particular defendant's misconduct. This instruction was adequate to guard against any possible prejudice to Maxwell and Metts and any confusion remaining on the part of the jury. See Simmons v. Avisco, Local 713, 350 F.2d 1012, 1018-19 (4th Cir.1965).
 
 
 35
 Maxwell and Metts also contend that the compensatory damage award was excessive because it was disproportionate to the out-of-pocket losses shown by Goodwin and Hallman. They note that the plaintiffs proved only about $3,500 in out-of-pocket expenses.
 
 
 36
 The question of the propriety of a jury's damage award is committed to the discretion of the district court. See Sevigny, 846 F.2d at 959. "Essentially, on appeal we ask only whether the verdict is so 'untoward, inordinate, unreasonable or outrageous' as to be a denial of justice to allow it to stand." 846 F.2d at 959.
 
 
 37
 We will not disturb the district court's discretionary ruling merely because the compensatory award considerably exceeded Goodwin's and Hallman's out-of-pocket losses. See Sevigny, 846 F.2d at 959. In Sevigny, we declined to set aside a $112,000 compensatory damage award in a section 1983 false arrest action, despite the fact that the plaintiff "only proved $3680 in special damages." 846 F.2d at 959. Here, as in Sevigny, "[t]here was ... substantial evidence ... from which the jury could, and presumably did, find that [the plaintiffs] suffered extreme emotional distress," and were entitled to significant compensation for their injuries. Sevigny, 846 F.2d at 959. The district court did not abuse its discretion in sustaining the compensatory damages verdict.
 
 VII
 
 38
 Maxwell also contends that the punitive damages verdict should be set aside.
 
 
 39
 The Supreme Court recently reiterated the principles governing the application of state and federal law to the issue of punitive damages:
 
 
 40
 In a diversity action, or in any other lawsuit where state law provides the basis of decision, the propriety of an award of punitive damages for the conduct in question, and the factors the jury may consider in determining their amount, are questions of state law. Federal law, however, will control on those issues involving the proper review of the jury award by a federal district court and court of appeals.
 
 
 41
 Browning-Ferris Indus. v. Kelco Disposal, Inc., --- U.S. ----, ----, 109 S.Ct. 2909, 2921-23, 106 L.Ed.2d 219 (1989) (footnotes and citations omitted). South Carolina authorizes an award of punitive damages when a plaintiff "proves the wanton, willful or malicious violation of his rights." Gilbert v. Duke Power Co., 255 S.C. 495, 500, 179 S.E.2d 720, 723 (1971). Punitive damages are available in section 1983 actions only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983).
 
 
 42
 Maxwell contends that the punitive damage award is not supported by evidence sufficient to satisfy the requirements of federal or South Carolina law. Goodwin and Hallman counter by arguing that the malicious prosecution verdict shows Maxwell acted with malice. By holding Maxwell liable for malicious prosecution, they contend, the jury necessarily found that he had acted with malice, as malice is an element of the tort of malicious prosecution. Because Maxwell was shown to have acted with malice, and proof of malice justifies punitive damages, they insist that "without more" they are entitled to the award. Brief at 45.
 
 
 43
 Goodwin and Hallman, however, overlook South Carolina's distinction between the degree of malice that must be shown in order to establish a claim of which malice is an element and the showing of malice required to sustain punitive damages. South Carolina courts take the view that there are two kinds of malice, "implied malice or malice in law, and actual malice or malice in fact." Jones v. Garner, 250 S.C. 479, 488, 158 S.E.2d 909, 913 (1968). " 'Malice in law, or legal malice, is a presumption of law....' " 250 S.C. at 488, 158 S.E.2d at 913. It arises when a jury is permitted to infer malice from other facts and suffices to show malice in actions in which malice is a requisite element. See 250 S.C. at 488, 158 S.E.2d at 914. In contrast, "[a]ctual malice or malice in fact is not presumed and must be proved. Actual malice means that the defendant was actuated by ill will in what he did, with the design to causelessly and wantonly injure the plaintiff; or [acted] with such recklessness as to show a conscious indifference toward plaintiff's rights." 250 S.C. at 488, 158 S.E.2d at 914.
 
 
 44
 This distinction between implied and actual malice is significant because of South Carolina's rule that "[w]hile implied malice will support an award of actual damages, punitive damages cannot be recovered in the absence of proof of actual malice." Jones, 250 S.C. at 488, 158 S.E.2d at 914. Although this rule was developed in the South Carolina law of libel and defamation, we are confident that South Carolina courts would follow the reasoning of other courts that have required proof of actual malice to justify an award of punitive damages for malicious prosecution.[3] Typical is the reasoning employed by the Supreme Court of Virginia:
 
 
 45
 In a malicious prosecution action, it is proper to award punitive damages only when actual malice, or malice in fact, has been established by the evidence. Legal malice, which may be inferred from want of probable cause, is not sufficient. Actual malice, or malice in fact, may be established by showing that the prosecutor's action was prompted by ill will, malevolence, grudge, spite, wicked intention, or a conscious disregard of the rights of another.
 
 
 46
 Lee v. Southland Corp., 219 Va. 23, 244 S.E.2d 756, 759 (1978) (citation omitted).
 
 
 47
 It is particularly appropriate to apply the distinction between implied and actual malice to actions seeking punitive damages for malicious prosecution. As we have noted, South Carolina implies malice from a lack of probable cause. See Parrott, 246 S.C. at 322, 143 S.E.2d at 609. Whether a police officer acted without probable cause is determined by objectively examining his conduct. Conversely, proof of actual malice sufficient to sustain a verdict for punitive damages requires assessment of the officer's subjective intent--whether he had an evil motive or acted with ill will, intending wantonly to injure the plaintiff, or the recklessness of his actions manifested a conscious disregard of the rights of the plaintiff. Only if at least one of these factors is present is a punitive award justified.
 
 
 48
 The evidence disclosed that Maxwell disliked the attorney who defended Goodwin and Hallman in their state criminal trial. Maxwell admitted the animosity but asserted that it did not influence his conduct with respect to Goodwin and Hallman. Had the jury believed that Maxwell's animosity prompted the continuation of the prosecution, it would have been justified in awarding damages under South Carolina law for the intentional infliction of emotional distress. If a police officer allowed a grudge against an attorney to cause prosecution of the attorney's innocent clients, the officer's conduct would constitute the tort of intentional infliction of emotional distress which the South Carolina Supreme Court has described as conduct as "so 'extreme and outrageous' as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community.' " Ford v. Hutson, 276 S.C. 157, 162, 276 S.E.2d 776, 778 (1981). The jury, however, rejected the attack on Maxwell's motive and exonerated him from the tort of intentional infliction of emotional distress. This verdict and the lack of other evidence of actual malice establishes that the award of punitive damages cannot be sustained on the state law claim.
 
 
 49
 The requirements for proving punitive damages in an action brought under section 1983 are akin to actual malice as defined by the Supreme Court of South Carolina. Compare Smith v. Wade, 461 U.S. at 56, 103 S.Ct. at 1640, with Gilbert v. Duke Power Co., 255 S.C. at 500, 179 S.E.2d at 723. The reasons that preclude punitive damages on the state law claim also bar a punitive award on the section 1983 claim.
 
 
 50
 The judgment of the district court awarding compensatory damages is sustained. The judgment awarding punitive damages is reversed, and the case is remanded for entry of judgment in accordance with this opinion.
 
 
 51
 The parties shall bear their own costs.
 
 
 
 [1]
 Under South Carolina law, the elements of the tort of malicious prosecution are "(1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage." Eaves v. Broad River Elec. Coop., 277 S.C. 475, 477, 289 S.E.2d 414, 415 (1982). For the purpose of establishing the elements of malicious prosecution, malice may be inferred from lack of probable cause. See Parrott v. Plowden Motor Co., 246 S.C. 318, 322, 143 S.E.2d 607, 609 (1965)
 Essentially, the section 1983 claim consists of malicious prosecution resulting in a constitutional deprivation. Cf. Baker v. McCollan, 443 U.S. 137, 142, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433 (1979).
 Under section 1983, damages may not be awarded against a municipality or its supervisory officers solely on a theory of respondeat superior. See Monell v. Department of Social Serv., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Therefore the fact that the jury held against Metts on the state law claim but in his favor on the section 1983 claim indicates, as the district court concluded, that the basis of Metts's liability is the South Carolina sheriff's statute, S.C.Code Ann. Sec. 23-13-10 (Law. Co-op.1989), on which the jury was charged. This statute holds a sheriff strictly liable for the tortious conduct of his deputies. Metts asserts no claims of error other than those assigned by Maxwell, so our references to Maxwell's challenge to the state law verdict necessarily encompass Metts's challenge as well.
 
 
 [2]
 The district court explained this rule of South Carolina law in its instruction to the jury. To emphasize the point, the court made it the subject of its first charge:
 I charge you that under South Carolina law, after indictment and before a jury is impaneled and sworn in a criminal case, the power to nol pros the case, that is, the power to put an end to the prosecution and prevent the case from going to trial is within the sole discretion of the solicitor.
 
 
 [3]
 See, e.g., Proctor v. Stevens Employment Serv., Inc., 712 S.W.2d 684, 687 (Mo.1986); Nevada Credit Rating Bureau, Inc. v. Williams, 88 Nev. 601, 503 P.2d 9, 14-15 (1972); Park v. Security Bank and Trust Co., 512 P.2d 113, 119 (Okla.1973); Lee v. Southland Corp., 219 Va. 23, 244 S.E.2d 756, 759 (1978); AAA Employment, Inc. v. Weed, 457 So.2d 428, 431-32 (Ala.Civ.App.1984); Jones v. Gwynne, 64 N.C.App. 51, 306 S.E.2d 574, 578 (1983) aff'd in part and rev'd in part on other grounds, 312 N.C. 393, 323 S.E.2d 9 (1984); cf. Shore, Shirley & Co. v. Kelley, 40 Ohio App.3d 10, 531 N.E.2d 333, 339 (1988). Contra, Adams v. Whitfield, 290 So.2d 49, 51 (Fla.1974); Montgomery Ward & Co. v. Keulemans, 275 Md. 441, 340 A.2d 705, 709-10 (1975)