MURNAGHAN, Circuit Judge,
dissenting:
The substance of the point which I dissent to emphasize has been made more politely by Judge Ervin in his dissent. He has refrained, because he is more of a gentleman than I, from using some clear and simple words that judges should abide by. Judges should unflinchingly see that fairness prevails, particularly in the conduct of police. The overwhelming duty of officers sworn to enforce the law is to protect every one of us from injustice. The proper responsibility of the police is to identify, indict, convict and imprison actual criminals; the actions of Officers Shingleton and Collins, which led to the wrongful conviction and lengthy imprisonment of Lesly Jean, were manifestly unfair.
The' majority opinion marks an unmistakable movement in this circuit to a rule of actually unqualified, though technically called qualified, immunity for police officers. The means by which this has been accomplished while paying lip service to qualified immunity *713 principles are three-fold: emphasis upon the special exigencies of police work with its unique demands for spontaneous, unreflec-tive action; a perceptible lowering of the objective reasonableness standard for assessing police awareness and conduct in particular cases; and, closely related to the latter, a dramatic narrowing of that law which, for police officers, will be considered well-settled at the critical time. The last of these is the principal vehicle by which the majority finds qualified immunity here. Judge Ervin’s dissent persuasively demonstrates the error in that analysis.
The majority holds today that “[ojrdinarily, ... courts in this circuit need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the ease arose to determine whether a right was clearly established at a particular time.” Maj. op. at 709. I disagree that such an approach should inevitably be applied, and would consider pertinent authority from other jurisdictions in determining whether a constitutional right was clearly established at the time of the alleged violation. See, e.g., United States v. Bryant, 439 F.2d 642, 650 (D.C.Cir.1971) (holding that “[t]he duty of disclosure affects not only the prosecutor, but the Government as a whole, including its investigative agencies”); Emmett v. Ricketts, 397 F.Supp. 1025, 1040-42 (N.D.Ga.1975) (noting that Barbee v. Warden, 331 F.2d 842 (4th Cir.1964), was “particularly apropos” in holding that a hypnotist hired by the prosecutor had a duty to disclose records of hypnosis). I emphasize, moreover, that a right may be clearly established even though no prior case exists involving the “very action” challenged as unlawful, see Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), a rule we often repeat but only rarely apply.
Diligent and honest pursuit of lawbreakers by police officers is the rule, and we should require no less. That duty undoubtedly includes the obligation to furnish the prosecutor with exculpatory evidence, and that responsibility was clearly established in 1982. I dissent.
ERVIN, Circuit Judge,
dissenting:
The majority holds that Lesly Jean had no clearly established constitutional right to the delivery of material, exculpatory evidence from Officers Collins and Shingleton (“the officers”) to the prosecutor during his 1982 trial. For the reasons below, I find the majority’s absolute immunity analysis unnecessary and its discussion of the qualified immunity question unpersuasive. Therefore, I respectfully dissent.
I.
The majority begins its analysis with an extended discussion of the officers’ absolute immunity from § 1983 liability on a theory, purportedly advanced by Jean, that the officers were under a duty to deliver material, exculpatory evidence directly to Jean’s defense counsel. The majority strains to point to evidence of this theory in the record because the argument is nowhere to be found in Jean’s brief on appeal. In fact, Jean clearly argues that the constitutional violation at issue is the officers’ failure to disclose evidence to the prosecutor, and not directly to defense counsel. In Jean’s brief, the “Statement of Issue Presented for Review” identifies the constitutional right at issue as “a law enforcement officer’s obligation to disclose exculpatory evidence to prosecutors.” Appellant’s Br. at 1 (emphasis added). In his “Summary of the Argument,” Jean mentions four times, in one and one-half pages, that the officers were under an obligation to disclose evidence to the prosecutor. See Appellant’s Br. at 23-24. So far as I can determine from the record, Jean has never actively pursued a theory of liability for the officers’ failure to disclose evidence directly to defense counsel. For that reason, there has been no discussion of absolute immunity in any of the previous proceedings in this case.
This is significant because immunity is an affirmative defense that must be pled lest it be waived. See Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); Wilkes v. Young, 28 F.3d 1362, 1377 n. 12 (4th Cir.1994) (Phillips, J., dissenting); Buenrostro v. Collazo, 973 F.2d 39, 44 (1st Cir.1992). While the officers’ answer to the *714 complaint raises the defense of “qualified good faith immunity,” see J.A. at 39, it says nothing of absolute immunity. On this very question, the Sixth Circuit has held that a defendant waives his right to absolute immunity if he raises only qualified immunity in his answer, motion to dismiss, or summary judgment motion. See Collyer v. Darling, 98 F.3d 211, 222 (6th Cir.1996) (“Although [the defendant] did raise the affirmative defense of qualified immunity, an absolute immunity determination involves an entirely different analysis. Given that the defense of absolute immunity was not affirmatively pleaded or argued ... and in light of the significant distinctions between qualified and absolute immunity claims, this defense was affirmatively waived .... ”), cert. denied, - U.S. -, 117 S.Ct. 2439, 138 L.Ed.2d 199 (1997).
If, as the majority believes, “Collins and Shingleton clearly understood Jean’s complaint to allege their failure to disclose evidence directly to Jean’s defense counsel,” maj. op. at 705, then the officers were obliged to raise absolute immunity as an affirmative defense in their answer to that complaint or, at the very least, in their memorandum in support of their motion for summary judgment. While I do not believe that Jean has proceeded on a theory that police officers must disclose evidence directly to defense counsel, if the majority is correct that he has, then the officers have waived any claim of absolute immunity that may have been available.
I also would note that the majority’s discourse on absolute immunity does nothing to call into question our cases in which police officers have been held liable for money damages for failure to turn over material, exculpatory evidence to the prosecutor. See Taylor v. Waters, 81 F.3d 429, 436 n. 5 (4th Cir.1996); Carter v. Burch, 34 F.3d 257, 263-64 (4th Cir.1994). The majority’s discussion of absolute immunity merely clarifies that, as a matter of theory, a police officer may be liable for a Brady violation under § 1983, not because he is under a duty to disclose evidence directly to defense counsel, but rather, because his duty is to deliver such information to the prosecutor.
II.
Having toppled its straw man, the majority proceeds to answer the real question raised by this case — whether the officers are entitled to qualified immunity on Jean’s theory that they were under a duty to deliver material, exculpatory evidence to the prosecutor. In section III of its opinion, the majority holds that the officers are entitled to qualified immunity because it was not clearly established in 1982 that the officers violated the law in failing to hand over material, exculpatory evidence to the prosecutor. For the reasons I expressed in my opinion for the panel in this case, see Jean v. Collins, 107 F.3d 1111 (4th Cir.1997), vacated, (Sep. 19, 1997), and for those articulated by Judge Hamilton in his concurring opinion, see Jean, 107 F.3d 1118-20, I disagree with the judgment of the majority of the court. Aside from those general arguments, however, I wish to point out my specific disagreements with the reasoning in the majority opinion.
In order to do this, it is helpful to recognize exactly what requests for evidence were made by defense counsel in this case. Defense counsel in fact made two requests for evidence. The first was a generalized motion for discovery that included the following requests: 1) “[t]o disclose the facts and circumstances surrounding any ... pretrial identification;” and 2) “[t]o permit the defendant to inspect and copy ... mechanical or electronic recordings, tangible objects, or copies or portions thereof.” Jean v. Rice, 945 F.2d 82, 85 (4th Cir.1991).
The second request for evidence came after trial had already begun, when defense counsel learned for the first time, during the State’s direct examination of the victim, that both she and Officer Shingleton had been hypnotized by Collins. At that point, defense counsel renewed their motion for discovery and asked the prosecution for any tapes or notes that were made during the hypnoses. The panel that granted Jean’s habeas petition recognized this second request, see Jean, 945 F.2d at 85 (“After learning of the hypnosis, counsel requested any recordings that might exist — inexplicably the state still did not provide its records or tapes.”), as does the majority in this case, see maj. op. at 704- *715 705 (“The prosecutor also did not disclose the recordings of the hypnotic sessions, despite general pretrial discovery requests and a more specific request for such recordings by defense attorneys at trial.”). Defense counsel not only made a “more” specific request for evidence, they could not have been any more specific: defense counsel requested an audiotape or notes from the hypnoses, if any such tape or notes existed. We know now that the officers created an audiotape and took notes during the hypnoses, that this evidence was in the officers’ possession, and yet it was not given to the prosecutor.
I point this out to indicate how the majority’s discussion in page 711 of its opinion is not dispositive of the question on appeal. As to the first, generalized request for discovery, the majority argues that because of the nature of the evidence in question (hypnosis evidence), the officers may or may not have known that such evidence would fall under the rubric of material, exculpatory evidence. But as to defense counsel’s second request, specifically asking for any existing tapes or notes of the hypnoses, the nature of the evidence drops out of consideration.
Surely the majority would agree that, as a general matter, Jean had a clearly established right in 1982 to material, exculpatory evidence that had been specifically identified and requested by his defense counsel. In light of defense counsel’s specific request for tapes or notes from the hypnoses, the nature of the evidence is irrelevant to the Brady question. Defense counsel requested any audiotape or notes that might exist regarding hypnosis; those tapes and notes existed, the officers knew they existed and were -within their control, and yet the officers did not turn them over to the prosecutor.
Stripped of its surplusage, then, the majority’s holding in this case rests on its argument that in 1982 a reasonable police officer would not have known that in concealing evidence from the prosecutor he violated the constitutional rights of a criminal defendant. The majority concedes that recent precedent in this circuit recognizes that such police misconduct can be a violation of a defendant’s constitutional rights. See maj. op. at 710 n. 3 (citing Goodwin v. Metts, 885 F.2d 157, 162-63 (4th Cir.1989), overruled in part by Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)). The majority’s argument is simply that while this right is now clearly established, it was not in 1982. Although the majority cites and recognizes this court’s decision in Goodwin v. Metts, the majority fails to appreciate its significance.
In Goodwin, the court confronted the identical question posed in this case: whether a police officer should receive qualified immunity in a § 1983 action for failing to disclose exculpatory information in his possession to the prosecutor. The importance of Goodtvin is that the conduct at issue in that case occurred in 1988, the year after the events at issue in this case. Goodwin held that a police officer was not entitled to qualified immunity for failure to turn over exculpatory evidence to a prosecutor because such conduct violated a constitutional right that was clearly established in 1983: “A reasonable officer would have known that a prosecution carried out without ... disclosure of exculpatory information would violate the constitutional rights of the criminal defendants.” Goodwin, 885 F.2d at 164. Since the majority does not call Goodwin into question, I assume the majority would agree that had the events at issue in this case taken place in 1983, the illegality of the officers’ conduct would have been clearly established.
The majority’s analysis of this issue reveals a misunderstanding about my use of Goodwin, see maj. op. at 711, as well as the nature of qualified immunity. A right does not become clearly established when a plaintiff successfully brings an action to enforce it under § 1983, as the majority apparently believes. See maj. op. at 712 (“[T]he officers had no earthly idea that they would be subject to a federal cause of action for money damages_”); maj. op. at 710 n. 3 (“Goodwin now provide[s] notice to police officers that they can be subject to monetary damages under section 1983_”). It is irrelevant whether the officers would have been on notice in 1982 that a panel of this court had held other officers liable for a Brady violation under § 1983. The question is whether the underlying constitutional or statutory right upon which the § 1983 action is premised was clearly established at the time the officers acted. Goodtvin is clear in its hold *716 ing that the constitutional right at issue in this ease was clearly established in 1983, one year after the officers’ conduct here.
In order to go along with the majority’s position, then, one must assume that a case was decided between 1982 and 1983 which clearly established that police officers violate the constitutional rights of a criminal defendant when they conceal material, exculpatory evidence from the prosecutor. This is the only way to reconcile the majority’s opinion, holding that “police officers who in 1982 failed to give [exculpatory] evidence to prosecutors did not themselves violate a clearly established constitutional right,” see maj. op. at 712, and Goodwin, holding that police officers who failed to perform the same duty in 1983 did violate a clearly established right. Of course, no such case exists. A criminal defendant’s constitutional right to have the police turn over material, exculpatory evidence to the prosecutor has been clearly established in this circuit since at least 1964.
[I]t makes no difference if the withholding[of exculpatory evidence] is by officials other than the prosecutor. The police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State’s Attorney, were guilty of the nondisclosure. If the police allow the State’s Attorney to produce evidence pointing to guilt without informing him of other evidence in their possession which contradicts this inference, state officers are practicing deception not only on the State’s Attorney but on the court and the defendant.
Barbee v. Warden, Md. Penitentiary, 331 F.2d 842, 846 (4th Cir.1964) (emphasis added) (footnote omitted).
The majority believes that, in 1982, the law of this circuit held that if a police officer withheld exculpatory evidence from a criminal defendant, this misconduct was not a direct constitutional violation, but rather, was “imputed to” the prosecutor. The majority’s “imputed to” theory is an elaborate legal fiction that emanates from a footnote in our decision in United States v. Sutton, 542 F.2d 1239, 1241 n. 2 (4th Cir.1976). The majority creates this “imputed to” legal fiction based on a single footnote in Sutton, ignoring this court’s clear holdings in Barbee and its progeny. The majority ignores Barbee’s plain statement that the police misconduct at issue in this case practices a deception “not only” on the prosecutor, but on the court “and the defendant.” See Barbee, 331 F.2d at 846. The most logical and consistent interpretation of this court’s precedent suggests that Jean’s right to matérial, exculpatory evidence has been clearly established since our decision in Barbee.
More importantly, if a police officer’s misconduct was “imputed to” the prosecutor in 1982, the majority fails to explain at what point since 1982 we rejected the “imputed to” analysis. The majority recognizes that our circuit has recently upheld § 1983 judgments against police officers who withheld material, exculpatory evidence from a criminal defendant. See maj. op. at 710 n. 3. This means that a police officer’s withholding of exculpatory evidence is no longer “imputed to” the prosecution for purposes of holding an officer liable under § 1983. The majority points to no authority to explain how this kind of police misconduct was “imputed to” the prosecutor in 1982, but is now its own direct violation of a criminal defendant’s constitutional rights.
The simple answer here is that no authority exists to explain this change because the change never occurred in the first place. At least since Barbee in 1964, a reasonable police officer in North Carolina would have known that a criminal defendant has a clearly established right to have officers deliver material, exculpatory evidence to prosecutors. For that reason, the officers in this case are not entitled to qualified immunity for their misconduct.
III.
According to the majority, holding Collins and Shingleton liable for the violation of Jean’s constitutional rights would make them scapegoats. Nothing could be further from the truth — the real scapegoat in this matter is Lesly Jean. Jean spent nine years in prison for a crime he did not commit because police officers used “hypnosis” to alter the description of the perpetrator of this crime so that it matched Jean’s appearance and his clothes.
*717 The officers in this case are not scapegoats. To the contrary, they are without doubt responsible for the mockery of justice that resulted in Jean’s nine-year confinement. As I have argued, the question before us is whether a reasonable police officer would have known in 1982 that concealing evidence from the prosecutor violated the constitutional rights of a criminal defendant. While qualified immunity should be invoked in every case in which an officer’s conduct was arguably within the bounds of the law, in this case no such argument can be made. The officers’ conduct in the prosecution of Jean was reprehensible and a total betrayal of the trust that society places in those whom it empowers to enforce the law. That Jean will not be allowed the opportunity to present his claim to a jury only perpetuates the injustices that have befallen him in the legal process, and I respectfully dissent. Judges Mumaghan, Hamilton, Michael, and Motz join in this dissent.
HAMILTON, Circuit Judge,
dissenting:
The major theme of the majority’s opinion is “No Case on Point!” That is, the majority leaves no doubt that, to avoid the qualified immunity gauntlet, a § 1983 plaintiff must demonstrate that in a prior case decided by the Supreme Court, this court, or the highest court of the state in which the case arose, the conduct engaged in by the government official was held to be constitutionally unlawful. The “No Case on Point” doctrine makes a mockery of the Supreme Court’s decision in Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In Anderson, the Supreme Court explicitly held that a § 1983 plaintiff need not show that in a prior case the government official’s actions were held to be constitutionally unlawful. Id. at 640, 107 S.Ct. 3034. Because the majority fails to follow Anderson, I dissent.
Qualified immunity turns on whether, at the time of the government official’s conduct, the actions of the government official violated “clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The “contours of the right must be sufficiently dear that a reasonable official would understand what he is doing violates that right.” Anderson, 483 U.S. at 640, 107 S.Ct. 3034. In other words, the government official’s action in question need not have previously been found to be unlawful, see id.; rather, “in light of pre-existing law the unlawfulness must be apparent,” id.
At the time of Shingleton and Collins’ actions in 1982, our case law clearly established that a defendant’s due process rights were violated when the police concealed material exculpatory evidence. See Barbee v. Warden, 331 F.2d 842, 846 (4th Cir.1964); see also Boone v. Paderick, 541 F.2d 447, 450-51 (4th Cir.1976) (holding that duty to disclose not “neutralized because [evidence] was in the hands of the police rather than the prosecutor”). As we noted in Barbee:
Failure of the police to reveal such material evidence in their possession is equally harmful to a defendant whether the information is purposefully, or negligently, withheld. And it makes no difference if the withholding is by officials other than the prosecutor. The police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State’s Attorney, were guilty of the nondisclosure. If the police allow the State’s Attorney to produce evidence pointing to guilt without ever informing him of other evidence in their possession which contradicts this inference, state officers are practicing deception not only on the State’s Attorney but on the court and the defendant....
331 F.2d at 846 (footnote omitted).
In holding that Shingleton and Collins are entitled to qualified immunity, the majority first posits that a reasonable officer in 1982 would not have known that withholding material exculpatory evidence violated Jean’s constitutional rights. This proposition is tomfoolery. Barbee established the proposition that a criminal defendant has the constitutional right to have the police disclose material exculpatory evidence. Id. In cases post-Barbee, we have consistently held that a police officer can be liable under § 1983 for the failure to disclose material exculpatory evidence. See Taylor v. Waters, 81 F.3d 429, 436 n. 5 (4th Cir.1996); Carter v. Burch, 34 F.3d 257, 264 (4th Cir.1994); Goodwin v. Metts, 885 F.2d 157, 162-63 (4th Cir.1989), overruled in part by Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 *718 (1994). Because there have been no cases since Barbee altering the longstanding principal that a police officer has the duty to disclose material exculpatory evidence, Shin-gleton and Collins are not entitled to qualified immunity.
The majority does explain in a footnote what it would take to make the unlawfulness of Shingleton and Collins’ áctions “apparent.” The majority posits that our decisions in “Taylor, Carter, and Goodwin now provide notice to police officers that they can be subject to monetary damages under section 1983 for failure to disclose exculpatory evidence to the prosecutor.” Ante at 710 n. 3. Thus, according to the majority, a case on point is required to provide the necessary notice to police officers before they can be liable under § 1983. This is precisely what Anderson says is forbidden. See 483 U.S. at 640, 107 S.Ct. 3034.
Perhaps an even more fundamental problem with the majority’s analysis is its failure to explain why the unlawfulness of the conduct of the officers was apparent to the officers in Goodwin (where the officers’ actions occurred in 1983), but was not apparent to Shingleton and Collins in 1982. Judge Ervin correctly points out that there was no intervening decision between 1982 and 1983 that would have made the officers in Goodwin more aware of their unlawfulness than Shingleton and Collins. See ante at 714-716. Thus, in the absence of an intervening decision, there is no rational way to square the reasoning of Goodwin — •that a police officer is not entitled to qualified immunity for his failure to disclose material exculpatory evidence, if his actions occurred in 1983 — with the reasoning of the majority — that a police officer is not entitled to qualified immunity for his failure to disclose material exculpatory evidence, if his actions occurred in 1982. This point is important because it illustrates the dramatic shift in our qualified immunity jurisprudence. Whereas a case on point was not required when Goodwin was decided, now one is. And such “case on point” deci-sionmaking is patently at odds with Anderson.
In a last ditch effort to find qualified immunity, the majority also posits that a reasonable officer would not have known that withholding exculpatory evidence in the form of statements given under hypnosis violated Jean’s constitutional rights. This rationale is even more absurd than the first one served up by the majority. Suffice it to say that exculpatory evidence is exculpatory evidence. The nature of the exculpatory evidence is simply irrelevant. To hold otherwise would turn Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), on its head.
It follows that I would reverse.
Judge Murnaghan joins in this dissent.