WYNN, Circuit Judge,
dissenting:
When viewed in the light most favorable to the nonmoving party, the evidence in this case could support a finding that, as a result of Officer Horner’s failure to perform his duties competently and thoroughly, Michael Dwayne Durham (“Durham”) was wrongfully indicted, arrested, and incarcerated. Because I would find that Officer Horner’s mistaken conclusion regarding Durham’s identity cannot be deemed objectively reasonable as a matter of law- and that, by turn, he is therefore not entitled to qualified immunity as a matter of law — I must respectfully dissent.
I.
The majority opinion would grant Officer Horner qualified immunity on the basis *191 that a grand jury “indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause.”[1] Ante at 189 (quotation marks omitted). According to the majority opinion, because of this indictment Durham is unable to establish that “a constitutional violation” occurred. See id. (“[T]he prosecution was plainly supported by probable cause, as conclusively established by three indictments.”). Thus, for the majority, the indictment breaks the causal chain between Officer Horner’s alleged incompetence and Durham’s injury. Id. at 189-90.
However, the Supreme Court has rejected a similar argument:
§ 1983 should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions. Since the common law recognized the causal link between the submission of a complaint and an ensuing arrest, we read § 1983 as recognizing the same causal link.
Malley v. Briggs, 475 U.S. 335, 345 n. 7, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (citation omitted). In applying Malley, we have held that “[a]n officer cannot invoke qualified immunity where he ‘did not avail himself of readily available information that would have clarified matters to the point that [the criminal charges] would have been flatly ruled out as factually unsupportable.’ ” Goodwin v. Metts, 885 F.2d 157, 164 (4th Cir.1989) (quoting Sevigny v. Dicksey, 846 F.2d 953, 957-58 (4th Cir.1988)), overruled in part by, Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). This limitation on qualified immunity comports with the Supreme Court’s admonition in Malley that officers who are “plainly incompetent or those who knowingly violate the law” should not be shielded from liability. 475 U.S. at 341, 106 S.Ct. 1092. Thus, a malicious or incompetent police officer who applies for an arrest warrant will not be protected from liability by qualified immunity. See Goodwin, 885 F.2d at 162. Likewise, such an officer will not be shielded from liability by a grand jury’s indictment.[2] See also Miller v. Prince George’s Cnty., M.D., 475 F.3d 621, 632 (4th Cir. 2007).
II.
Nonetheless, the majority determines, as a matter of law, that qualified immunity shields Officer Horner from liability regarding the wrongful arrest and confinement of Durham, based on a standard of “deliberately supplying] misleading information that influenced the [grand jury’s] decision” to indict. Goodwin, 885 F.2d at 162. However, Goodwin also states that an officer is not shielded from liability if “a reasonably well-trained officer in [his] position would have known that his affidavit [for a warrant] failed to establish probable cause and that he should not have applied for the warrant.” Id. (citation omitted). As the Supreme Court has noted, “objec *192 tive reasonableness” is the correct “standard ... [that] defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest.” Malley, 475 U.S. at 344, 106 S.Ct. 1092; see also Miller, 475 F.3d at 632 (“[A] police officer who recklessly ... omits material information from[ ] a search warrant affidavit cannot be said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost.” (citation and quotation marks omitted)). In this case, a genuine dispute of fact remains regarding whether Officer Horner’s mistakes were objectively reasonable. As such, this case cannot and should not be decided as a matter of law.
On a motion for summary judgment, the evidence and all reasonable inferences drawn from it should be viewed in the light most favorable to the nonmoving party, Durham. See Henry v. Purnell, 652 F.3d 524, 531 (4th Cir.2011). When viewed in this light, the evidence indicates that Officer Horner erroneously relied on a report from Accurint, a system which conspicuously warns that the information given needs corroboration.[3] That report showed at most a tenuous link between Officer Horner’s target and Durham’s Social Security number and former post office box.
Officer Horner’s unreasonable reliance and alleged failure to perform his duties thoroughly and competently set in motion a chain of events that ended with Durham’s wrongful arrest and imprisonment for over ninety days. Regardless of the performance of court-appointed counsel, the undeniable truth remains that, but for Officer Horner’s actions, Durham would never have been arrested and incarcerated. If the investigative officer cannot be held accountable for his recklessness or incompetence, then where is an innocent man to turn?
The record shows that the confidential “informant contacted [Officer] Horner and advised him [that] he made arrangements to purchase Methamphet[a]mine from Michael Durham.” [4] J.A. 284. Officer Horner put that name into the Accurint system and relied on the results of the resulting Accurint report, notwithstanding his knowledge of facts that directly undermined and contradicted the accuracy of the Accurint report.
For example, Officer Horner knew that his target was driving a Jeep with a stolen Tennessee license plate; however, Durham had a Mississippi driver’s license. Additionally, based on information from the confidential informant, Officer Horner believed his target was approximately sixty years old, but Officer Horner possessed a copy of the law enforcement report that showed Durham was only forty-nine years old. Moreover, the controlled drug buys under investigation took place in Wise County, Virginia, but Officer Horner knew that Durham had not lived there since *193 1999 and was currently living over 500 miles away, in Horn Lake, Mississippi. Indeed, Officer Horner admitted that he harbored doubts as to whether the Accurint report identified the correct target.
After Durham learned of the arrest warrant, David Byard, a friend of Durham’s, called the Wise County Sheriffs Department on Durham’s behalf and explained that Durham could not have committed this crime and had not lived in Virginia for over ten years. Byard was informed that Durham should turn himself in and that the matter would be straightened out.
In December 2006, Durham surrendered to Memphis authorities, waived extradition, and was transported to Virginia. Upon arrival, Durham told a magistrate that he had been wrongly indicted and that he had never sold drugs. After Durham’s arrest no picture was ever sent to the confidential informant for verification, and no action was taken to verify that the right person was arrested. J.A. 148-50. However, when a new suspect, Michael David Durham, was found, the investigative officer quickly sent a photograph to the confidential informant, who identified him as the perpetrator. J.A. 167-68.
When viewed in the light most favorable to Durham, these facts could support a finding that Officer Horner’s actions and mistakes were not objectively reasonable. See Goodwin, 885 F.2d at 164 (“An officer cannot invoke qualified immunity where he did not avail himself of readily available information that would have clarified matters to the point that [the criminal charges] would have been flatly ruled out as factually unsupportable.” (quotation marks omitted)); United States v. Reaves, 512 F.3d 123, 126 (4th Cir.2008) (“When the police rely on an anonymous tip to support reasonable suspicion, the tip must be accompanied by some corroborative elements that establish its reliability.” (quotation marks omitted)); cf. United States v. Massenburg, 654 F.3d 480, 486 (4th Cir. 2011) (“Reliance on an anonymous tip may be reasonable where, suitably corroborated, [it] exhibits sufficient indicia of reliability.” (quotation marks omitted)). Consequently, in my view, the district court erred in granting summary judgment on the basis of qualified immunity.
III.
The majority also maintains that Durham cannot establish a violation of a “clearly established” constitutional right. I disagree and would hold that Durham’s § 1983 malicious prosecution-type claim does meet this standard as a claim founded on the Fourth Amendment right to be free from unreasonable search and seizure. See Lambert v. Williams, 223 F.3d 257, 262 (4th Cir.2000) (stating that incorporating the common law elements of malicious prosecution claim with the elements of a § 1983 claim was not the creation of a new cause of action, but was done “in recognition of the fact that § 1983 was designed to create a ‘special species of tort liability.’” (quoting Imbler v. Pachtman, 424 U.S. 409, 417, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976))).
In this case, the parties do not contest that there is a clearly established, actionable right to freedom from prosecution without probable cause. Accordingly, it follows that Durham’s § 1983 malicious prosecution-type claim, asserted under the Fourth Amendment, amounts to a “clearly established” right to be free from unreasonable seizure. See id. at 260.
IV.
In sum, the majority holds that, since the grand jury indictment is conclusive evidence of probable cause, Durham is unable to establish the unreasonable seizure *194 element of a viable § 1983 claim based on malicious prosecution. However, to the contrary, Durham’s wrongful arrest and confinement may indeed meet the requirements of a § 1983 claim. Because there is a genuine dispute of fact as to whether Officer Horner’s actions, which resulted in Durham’s wrongful arrest and incarceration, were objectively reasonable, Brooks, 85 F.3d at 183-84, I respectfully dissent.

. To support this proposition, the majority relies on Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956). However, that case dealt with the Fifth Amendment's requirement for a grand jury, not the Fourth Amendment’s right to be free from unreasonable searches and seizures and its probable cause requirement, which are at issue here.

. The majority opinion relies on Jennings v. Patton, 644 F.3d 297 (5th Cir.2011), for the proposition that the failure to testify before the grand jury should afford Officer Horner an additional layer of protection. Ante at 189-90. However, in Jennings, the official given qualified immunity was not responsible for the preparation or presentation of the warrant application. Here, by contrast, Officer Horner prepared the evidence brought before the grand jury.

. The Accurint report begins with the following disclaimer:
The Public Records and commercially available data sources used on reports have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. This system should not be relied on as definitely accurate. Before relying on any data this system supplies, it should be independently verified.

. The majority determines that the confidential informant gave Officer Horner the name "Michael Dwayne Durham”. Ante at 185, 186, 189-90; J.A. 73, 180. However, the record reflects that the confidential informant may have simply identified "Michael Durham” as the target suspect. J.A. 222, 284. Therefore, it appears that there is a genuine dispute of material fact regarding whether the confidential informant identified the target suspect as "Michael Durham” or "Michael Dwayne Durham.” Such a disputed fact should be decided by a jury.